CATON *vs.* J. B. *&* R. RUMNEY.

The owners of a steam-boat, who undertake to *tow* a *freight boat* for hire, are not bound to more than *ordinary care and skill* in the management of their boat; they are not *quoad hoc* common carriers, and the law of common carriers is not applicable to them.

And *it seems*, in such case, that the *steam-boat* is not bound, for the safety of the *freight boat* to vary from the ordinary and regular course of her voyage.

THIS was an *action on the case*, tried at the Seneca circuit, in June, 1831, before the Hon. DANIEL MOSELEY, one of the circuit judges.

The declaration charges that the defendants were the owners of a *steam-boat* plying on the Seneca Lake, and that for a proper reward they undertook to tow a boat belonging to the plaintiff from Dresden to Geneva, and that though the care-

lessness of the servants of the defendants in the management of the steam-boat, the boat of the plaintiff was drawn under, filled with water and sunk; by means whereof the freight in the plaintiff's boat was lost, and the boat damaged. It was proved that the steam-boat, in the course of its regular trips from the head of the lake to Geneva, arrived at Dresden about eight o'clock P. M., on the 7th May, 1829, when the plaintiff applied to the master of the steam-boat to tow his freight boat, of about 30 tons, to Geneva. The plaintiff's boat was an open boat, loaded down to within 5 or 6 inches of the water's edge. The master told him he thought his boat was too heavily laden to be towed down, as the south wind was rising. The plaintiff said he was very anxious to get down, and he must and would go, and accordingly fastened his boat to the steam-boat, and the vessels proceeded on their voyage. The wind rose and there were heavy swells on the lake, and when within about three miles of Geneva, the boat of the plaintiff filled with water and sunk, and her cargo, worth about $500, was lost. The plaintiff insisted that his boat was lost in consequence of the unskilful manner in which the steam-boat was managed, and that by means thereof his boat was drawn into the trough of the waves, and thus lost. Upon this point many witnesses were sworn, whose testimony was contradictory. The defendants, in addition to proving that the steam-boat was managed with care and skill, adduced testimony to show that the boat of the plaintiff was old, rotton, not seaworthy, and overloaded. The judge charged the jury that the defendants having undertaken for a compensation to tow the plaintiff's boat from Dresden to Geneva, it was their duty to bring the boat in safety into harbor, *if it was possible to do so*; that the defendants were bound to *more than ordinary care and skill* in the management of the steam-boat; that it was not enough to excuse them from damages that the steam-boat was well managed, and kept steadily in the regular course of her voyage; because it was their duty, if the swells upon the lake occasioned by the winds, required that for the safety of the plaintiff's boat, the steam-boat should depart from its regular course, the defendants were bound to change their course, so as to keep the boat *in tow*, out of the

troughs of the waves ; and if they had omitted to do so, they were liable in damages. He further instructed the jury, that if they should find that the plaintiff's boat was lost by means *beyond the control of the defendants*, the defendants would be entitled to their verdict ; *otherwise* they must find for the plaintiff the value of the cargo, and might give such smart money as in their opinion would cover the loss and expenses of the plaintiff. The jury found for the plaintiff with $500 damages. The defendants ask for a new trial.

ALBANY, Jan. 1835.

Caton v. Rumney.

*M. T. Reynolds*, for the defendants.

*S. Stevens*, for the plaintiff.

*By the Court*, SUTHERLAND, J. The judge misdirected the jury, and the verdict also, even under the charge, appears to me to be against the weight of evidence. The law of common carriers is not applicable to the undertaking of the defendants in this case. They were not insurers of the plaintiff's vessel. The judge charged the jury that the defendants were bound to exert *more than ordinary care and skill* in the management of their steam boat. If the judge meant that they were bound to more care and skill than was ordinarily necessary in calm weather and smooth water, there can be no objection to it. But it is not probable that that was his meaning, or that he was so understood by the jury. He meant that the undertaking of the defendants legally imposed upon them the duty of exerting *extraordinary care and skill* in conducting the plaintiff's boat to Geneva. That this was the meaning of the judge, appears also from another part of the charge, in which he says, it was the defendants' duty to tow the plaintiff's boat in safety to the harbor(of Geneva) *if it was possible.* The jury had a right to infer, from these strong expressions of the judge, that if in their opinion it was possible for human *care and skill* to have towed the plaintiff's boat in safety, then they must give a verdict for the plaintiff. The defendants certainly are not liable in the character of common carriers ; and if not, then they were bound to the exercise of only *ordinary care and skill.* But I think the weight of evi-

dence shows that the boat sunk in consequence of her being rotten and overloaded ; that from those causes her seams opened with the heaving of the waves, and that she filled from leaking, and not in consequence of being carried by the defendants into the trough of the waves. As the evidence appears upon paper, I think no man can resist this conclusion.

New trial granted.