# Law and Equity

IN THE

# SUPREME COURT

OF THE

## STATE OF NEW YORK.

————•●•————

PETER S. WOODEN *vs.* JEREMIAH AUSTIN, President of the Albany and Canal Line of Tow Boats.

The owners of a steamboat employed in the business of towing boats, for hire, are not common carriers, and hence not insurers. But they are liable if guilty of gross carelessness, if not for a failure to exercise ordinary care in the management of the steamer and the boats towed.

A provision in a contract for towing that the boats shall be towed "at the risk of the master and owner" of such boat, refers to the perils of navigation, simply, and cannot properly be construed to excuse the negligence of the proprietors of the towing vessel, or those in charge thereof.

Parties undertaking to tow a boat from one place to another are bound to do so, unless prevented by causes to which at least gross negligence on their part does not contribute.

The defendant agreed to tow the plaintiff's boat from Albany to New York. After proceeding about four miles, the defendants' hawser broke, and set the plaintiff's boat, with others, adrift, which floated down the river some fourteen miles, without any attempt to regain it. There was no explanation offered in respect to the strength of the hawser; or the immediate cause of

Wooden *v.* Austin.

its breaking; or in regard to the management of the steamer; or why an effort was not made to again take the plaintiff's boat in tow, although there was evidence to the effect that there was no difficulty in the steamer taking the entire tow through to New York. In an action against the defendants for damages occasioned by their negligence; *Held* that the plaintiff was improperly nonsuited.

The question of negligence is peculiarly a question of fact to be determined by the jury; and the case must be very clear which will justify the court in withholding it from their consideration.

THIS is a motion for a new trial, made by the plaintiff upon exceptions ordered to be heard in the first instance at a general term. On the 10th day of December, 1859, the plaintiff entered into an agreement with the defendant, by which, for the consideration of $50, the latter agreed to tow the plaintiff's boat to New York, from Albany. The plaintiff put in evidence the following:

"Albany, Dec. 10, 1859.
A. Nixon, master and owner,
                    To Steamboat Syracuse, Dr.
For towing from Albany to New York, at the risk of the master and owner of the boat or vessel towed, $50.
Received payment for owners,
                              OGDEN WYCKOFF."

The tow started for New York at 3 P. M. of the same day, and after proceeding about four miles, the hawser broke, and the tow separated from the propeller, and the defendant, after a delay of from half to three fourths of an hour, without an effort to again take the plaintiff's boat in tow, proceeded with two barges to New York. The plaintiff's boat floated down the river fourteen or fifteen miles, and froze in, opposite Stuyvesant, where her freight was taken off. The plaintiff was nonsuited, and now moves for a new trial.

*E. F. Bullard*, for the plaintiff.

*J. H. Reynolds*, for the defendant.

*By the Court,* INGALLS, J. The defendants were not common carriers, and hence not insurers. ( *Wells* v. *Steam Navigation Co.,* 2 *Comst.* 204. *Caton* v. *Rumney,* 13 *Wend.* 387.) The defendants were certainly liable, if guilty of gross carelessness, if not for a failure to exercise ordinary care in the management of the steamer and the tow. The decisions of the courts, in this state, have not been uniform in regard to the degree of negligence to be established, to render liable the owner of a vessel used for towing only. The following cases bear upon the question: *Alexander* v. *Greene,* (7 *Hill,* 533;) *Wells* v. *Steam Nav. Co.* (8 *N. Y. Rep.* 375;) *Dorr* v. *New Jersey Steam Nav. Co.* (11 *id.* 485;) *Mercantile Mutual Ins. Co.* v. *Calebs,* (20 *id.* 173;) *Bissell* v. *N. Y. Central R. R. Co.,* (25 *id.* 442;) *Moore* v. *Evans,* 14 *Barb.* 524;) *Waite's Law and Prac.* (*vol.* 1, *p.* 357.)

The provision of the contract " at the risk of the master and owner of the vessel towed" had reference to the perils of navigation, simply, and can not properly be construed to excuse the negligence of the defendants or those in charge of their propeller; for, to give it any other effect would encourage careless and even reckless misconduct. In *Wells* v. *Steam Navigation Company,* (8 *N. Y. Rep.* 379,) MASON, J. considering a similar contract, remarks: " The parties undoubtedly had reference to those perils of navigation which were not the result of *the contractor's own negligence,* when they provided that the boat should be towed at the risk of the master and owners."

The question of negligence is peculiarly a question of fact to be determined by the jury, and the case must be very clear which will justify the court in withholding it from their consideration. ( *Ernst* v. *Hudson River Railroad Co.,* 35 *N. Y. Rep.* 9.) We think it can hardly be said that the evidence, in the case under consideration, renders it so clear that the defendants were not guilty of a degree of negligence required to establish a liability, as to justify the court in nonsuiting the plaintiff. In determining this

question, the evidence must be considered most favorably
to the plaintiff, as by the course pursued he has been de-
prived of a right which he claimed upon the trial. From
a careful examination of the evidence we conclude that the
nonsuit should have been withheld. The defendants, by
their contract, agreed to transport the plaintiff's boat to
New York, and were bound to do so, unless prevented by
causes to which at least gross negligence on their part did
not contribute. (*Harmony* v. *Bingham*, 12 *N. Y. Rep.* 107.
*Wells* v. *Steam Nav. Co.*, (8 *id.* 375.) The defendants, as a
consideration for entering into the agreement, received
the money of the plaintiff, with a knowledge of the season
of the year, the condition of navigation, the capacity of
their steamer, and the extent of the tow. The plaintiff's
boat was taken in tow late in the afternoon of the day the
propeller started for New York, and after proceeding
three or four miles, the hawser *of the defendants* broke,
and set adrift ten canal boats, including the plaintiff's.
And the evidence discloses no effort on the part of the
defendants to regain the tow; nor was there any explana-
tion offered by the defendants, in respect to the strength
of the hawser, or the immediate cause of its breaking; or
in regard to the management of the steamer; or why an
effort was not made to again take the plaintiff's boat in
tow. *The rope which attached the plaintiff's boat to the haw-
ser was not severed;* nor is there the slightest evidence
showing mismanagement on the part of the plaintiff or
those on board of his boat. There is evidence showing
that the defendants' steamer was a staunch boat, of con-
siderable power, and well calculated to contend with the
obstacles to navigation. The plaintiff's boat drifted, by
force of the current alone, down the river some fourteen
miles, and the defendants' steamer, with two barges,
reached New York. There is also evidence to the effect
that there was no difficulty in the propeller taking the
entire tow through to New York. Under the circum-

stances of this case, the conduct of those in charge of the defendants' steamer is inexplicable, and indicates a total disregard of the contract, and the rights of the plaintiff. It is apparent from the case that the learned judge reluctantly consented to take the case from the jury, and we are satisfied that upon reflection he would have declined to do so, as the case was one proper for their consideration.

We conclude that a new trial should be granted.

[ALBANY GENERAL TERM, September 16, 1867. *Miller, Ingalls* and *Hogeboom*, Justices.]